PROVO STY, J.
The plaintiff is a contracting company for drilling wells in the Caddo oil field, and the defendant company is owner and lessee of lands in said field. The two companies entered .into a written contract for the drilling of five wells in said field. The price was to be $4,500 per well. The plaintiff company was to furnish the pipes. The wells were to be of not more than 1,600 feet in depth, and their casing was to be of 8 and 6 inches.
Subsequently, the parties orally agreed that the price should be $3 per foot; that the pipes should be furnished by the defendant company; that the wells should be not more than 2,300 feet in depth, and be six-inch wells.
The plaintiff company completed the five *889 wells, and by tacit continuance of tbe same contract drilled 24 more for the defendant company, all of which were satisfactory and paid for. The present suit is for the price of the thirtieth well, which the defendant company refused to accept. When the well had reached a depth of 2,100 feet, the discovery was made that water was leaking into it, and that the only way to remedy this trouble was by completing the well as a four-inch well. Plaintiff ottered to do this, or else to abandon the well and drill another. The defendant company refused to consent to the reduction of the diameter of the well. It had no objection to the well being abandoned and a new one drilled, provided the plaintiff company would furnish the pipes — a matter of some $5,000. Finding that no agreement could be arrived at with the defendant company, the plaintiff company completed the well as a four-inch well, and now sues for the price.
The defense is that defendant is not bound to accept a four-inch well when the contract calls for a six-inch well.
Plaintiff’s contention is that the leak in the well must have come from some defect in the pipe, for which it is in no wise responsible, and that the custom of the oil field is that where, without fault of the driller, a six-inch well cannot be completed in the diameter in which it is begun, the diameter is reduced.
The learned trial judge found for plaintiff, and we have reached the same conclusion. The evidence shows that the plaintiff company did the work'in the usual way, and that the custom of the field is as stated. As we understand the evidence on the subject of this custom, it is that the contingency of the driller finding it impossible, through no fault of his own, to complete a well in the original diameter, and of having to reduce the diameter, enters into the contemplation of the parties at the time of the contract, and is usually provided for when the contract is formal or written, but is left to implication when the contract is informal or oral; and that therefore a contract for a six-inch well calls in reality for a well to be begun in that diameter, but to be completed in a smaller diameter if through no fault of the driller the six-inch diameter cannot be maintained throughout.
The learned counsel for defendant contend, however, that in the present case the contract was a written contract; that the oral contract was not a new contract, but merely a modification of the existing contract; and that this written contract was modified only in respect to the depth and price of the wells and the matter of the furnishing of the pipe, not in respect to the diameter of the wells.
We do not find that the parties had any express understanding as to whether the new contract should be an entirely new one or merely a modification of the old. They, in all probability, never gave that matter a thought. The situation was that they had a contract for the drilling of five 1,600-foot wells, of eight and six inch casing, at a lump price, for which defendant was to furnish the pipe, and that they entered into a new agreement by which the wells were to be of 2,300 feet, and defendant was to furnish the pipe, and the wells were to be six-inch wells, and to be paid for by the foot. The only thing that remained unchanged in the contract was the number of the wells. Under these circumstances, we do not think it can be said that plaintiff company assumed the risk of defects in the pipes (which it was no longer to furnish) and the other risks attendant upon the drilling of deep wells. For all that appears, the danger of untoward accident may be much greater in drilling a 2,300-foot well than in drilling a 1,600-foot well. As a matter of fact, two of the five wells contracted for were finished in the same reduced diameter as the well in dispute, and *891 were accepted by defendant. Defendant company attributes its having accepted these two wells to its unsophdstication at that time; but the fact, all the same, carries considerable significance. We suspect the true reason of the unwillingness of defendant to accept the well was not so much its reduced diameter as its having proved to be a nonproducer. The evidence shows that the defendant company would have had no objection to accepting the well if it had been a producer. And it looks a good deal as if the first thought of the defendant company had been to base its refusal to accept the well, not upon its reduced diameter, but upon its supposed deficiency in depth.
Judgment affirmed.